Good morning, Your Honors. May it please the Court, I am Paul F. Millis, Myers-Swass English inclined for Appellant Toro College in this matter. Two prongs to this, one of them a little more complex, the personal jurisdiction. The first is whether or not the motion should have been entertained. Now it's not just elevating form over substance to say that rules are rules and they need to be complied with. Maybe the court wanted to get to C by not going through A to B to C. I guess I could understand that, but the fact is that under Rule 81 they have an obligation. But why can't we, why we can't we interpret the defendant's pre-motion letter as a request for an extension of time? Because it placed the parties and the district court, didn't it, on notice that a motion would be filed and it also set forth justifications as to why the defendants needed more time to adequately defend the litigation. Well, what it did is it said that . . . Didn't it do all those things? See, Your Honor, in the last part I'm not quite sure that it did. Obviously it's mentioning, to me it's dicta, they're saying that we want a pre-motion conference and then they add, by the way, we have to do certain things here. But they don't establish any rationale for it. If that were filed as a motion, I don't think that would be acceptable. Why couldn't it be understood as effectively a request for an extension of time? Because if we don't want to elevate form over substance. Well, let's put it this way. It certainly wasn't precise in terms of whatever request was made. And you know what? The court didn't consider that either because, why wouldn't the court then issue an order that your response has to be in by a certain time? Usually that's what happens when you negotiate with a court over an extension of time. You set a date certain. It didn't happen. So . . . Everybody, by April, in connection with the letter that Chief Judge Katzmann just alluded to, they say respondents now seek to make a motion to dismiss petitioner's action in its entirety on the grounds of lack of personal jurisdiction. So everyone knew exactly what was going to happen. But there's a secondary component to that is, do it. You could say all you wanted. You want to make a motion to dismiss a complaint. But if you have a time limit by which you have to do that, either you make it by that time limit or you request specifically an extension of that time limit. Did Judge Batts have a rule requiring a pre-motion conference? Well, the thing is, right here she did not for a purpose of making . . . Rule. Rule. In other words, many district judges in the Southern District prohibit motions without first a letter requesting a conference. Did she have such a rule? That's actually what I'm asking and I'm telling you. In connection with certain motions, yes. Motion for summary judgment, pre-motion conference. Many district court judges, as you know, have a rule that if you're making a motion to dismiss, which is subject to time limitations because you have to answer within a certain time, you do not need to request a conference. So that's the whole point of her short, but to me, clear letter, Counselor, you don't have to request such a thing under these circumstances. So now the next move is, what's next from their standpoint? Okay, then we'd like to have an extension of time because we're familiar with Rule 81. We know that we have to respond within a certain period of time. That didn't happen. I'm not criticizing. I'm just saying it didn't happen. I mean, no one knows why it didn't happen. Whether or not there's excusable neglect here kind of remains to be seen and maybe the fact that they might have forgotten or waited for Toro to do something where Toro had no obligation. We weren't sitting on any rights in any way compromising the appellee in this matter. We had no obligation to do anything. They had the obligation. They didn't follow through for whatever reason. We don't know. Is the failure to make that motion waive the personal jurisdiction defense or just the ability to make it in a motion? No, I don't think it waives the personal jurisdiction defense. That would be too strident. What we have said is that it waives the right to make the motion. But you could say no harm, no foul. I get it. I get it. If in fact you determine that there's no personal jurisdiction, which I'll deal with in a moment, I appreciate that very much. And again, but the rule is the rule. It seems to me there are complications here on the personal jurisdiction issue and that forum nonconvenience to me seems simpler. I mean, your client wanted a presence in Italy. It reached out to prospective partners in Italy. It helped create a foundation in Italy. It entered into an agreement in Italy. Why shouldn't this be litigated in Italy? Look, Judge, if the end . . . Is it an abuse of discretion to say that it should be litigated in Italy? Well, I think that when it comes to the rule of forum nonconvenience, we don't get there yet before we start dealing with the concept of jurisdiction. I understand it's a component. And in a sense . . . in a sense . . . look, this is without criticism, of course, to the court. My question is, even assuming personal jurisdiction, did the district court abuse its discretion in granting the forum nonconvenience motion? I think that if we had an opportunity to perform some level of I would say, at this stage of the game, yes. At this early stage, because we didn't deal with the jurisdictional issues in a way that we thought and we believe, respectfully, they should be dealt with. In addition, when we're talking about forum nonconvenience, we also have the other side of it that there's a toro half to this transaction. There really is. There really is. One of the things I want to say to the court is that at the core of this, we have an educational institution, toro, licensed, operating, accredited in the state of New York, which has branch campuses throughout the country. We have a school in Italy that goes above and beyond what it had a right to do and is essentially representing that it could issue American degrees in connection with the education there. So we can get into all the bits and pieces. And they're all important in terms of jurisdiction, because jurisdiction is extremely important and the Constitution must be preserved. But the fact is here is we have this school operating in Italy, telling Americans, and quite frankly all over the world, you'll get your American degree. And the only connection, the only reason . . . How does just saying that there's an American degree or offering an American degree from an Italian university project, show that the connection is clear to any reasonable person seeing that? Any student who says, you know what? I'd like to study at toro. They're across the country. But Italy sounds great. So I'll sign up. And it says toro New York. The assumption there, the reasonable assumption, is that    this American degree is because of toro, which is licensed in the state of New York. An educational operation in the state of New York. That's not far-fetched. So when they're saying an American degree . . . Who is that designed for? What's the audience? The audience is anyone that can get into that school to come to toro Rome, whether they be in the United States or in foreign countries. Does the record indicate whether any New Yorkers signed up for this? No. And that's something we don't know. They say that didn't happen. But we've had no opportunity to do any discovery. That goes to the issue of also the revenue, which I can go into. And it's in the brief as to why we think substantial revenue was involved here. But let's put it this way. If, in fact, they got application fees, if, in fact, they got tuition, I know they weren't operating, but anything's possible. I don't know that. I don't know the impact. But it's not just the impact on a New Yorker. And I think where the court got caught up with . . . Really, what's the total impact on New York? Is there even an application record . . . Is there even an application submitted in the record? There is not. In the application form? There is not. And here's the thing. When this case started, the only thing Toro's lawyer had was screenshots. Now, they say the website isn't operating. It could operate immediately upon your decision to basically uphold the district court if they wanted to. But the fact is that there is nothing there. What I know is that you can make inquiries on that website, and you can download an application . . . Make inquiries? What does that mean? You can seek information directly from the website and by contact information or otherwise that they have. By providing your contact information? The thing is, Judge, I don't have all the screenshots. No, no. Tell me what you know. What I know is that you can make inquiries. You can look into it, I believe. You say you can look . . . I believe. I'm into precision. Okay. I'm going to get you as precise as I can. You say you can look into it. What does that mean? Okay. You know what? I'll get more precise because that's a poor choice of words. When they talk about making inquiries, as I understand it, you can go to the website and look at it. It might not be enough, I understand. You just look at pictures on a website. But actually, there was a way of contacting these individuals. There was a way of contacting them. They had a contact information at a minimum, whether it be writing, email, or otherwise. I don't know the logistics of it because we don't have all the information. So you can look at it, you can contact. Anything else? Okay. One other thing, Judge, under those circumstances. You could download an application. What Judge Caspin just asked me is, what do we know about that? Now, if I knew that you could download an application, send it in via email with an application fee or whatever fee they want . . . I don't know that the hyperlink even worked. I don't. I don't know. So we don't know any of this. Exactly. Maybe discovery will help us out. But maybe, the thing is this, we put this out there, of this contact, against the backdrop of my major argument here, gentlemen, is that this is a New York educational institution. And I posit to you . . . The test is, under the New York Court of Appeals, you make a lot about the interactivity of the defendant. Website, you say, the test under New York State law is, and this is under New York Court of Appeals, as interpreting the law, is whether the defendant has projected itself into this state, I'm quoting, to engage in a sustained and substantial transaction of business. And none of your answers to Judge Lohier suggest that the standard has been met. I can only say that I don't have all the information yet. All I know is that this institution . . . I'll make one other point that I think you folks should know. If we have this student who decides to go to Toro, Rome, because they can get an American degree, which they reasonably believe came from Toro, New York, and they bring it back to the United States, all happy and proud, ready to start grad school, and they're told, your degree is worthless. And Toro, quite frankly, would be responsible, in my view, or someone could claim it, if they said, Toro, you let that website exist, you let that school advertise an American degree, which I reasonably believe was a Toro, New York degree, and what I got for my money was a piece of paper that I cannot use. They knew they were doing this. They did it purposefully. They did it to enhance their position with an educational institution that does have branches all over the world and in the United States. It may not be Harvard, but it certainly is out there, in play. And they did it to take advantage of that. And that's what we were trying to stop. That's what we were trying to prevent going forward. And we believe, breach of contract, tort, transacted business, we've given you all we have. It is all we have. And we've made the best of the record that we can. But the overarching problem here is that this institution, they decided to take advantage of their role with Toro, and that's to the detriment of Toro and to anyone else who signed up. With that said, unless there's any other questions, I'm complete. Thank you. Thank you. Good morning, Your Honors. John Vincenti for the appellees. I'd like to start with certain facts that are in the record that I think ripple throughout the legal issues here. This dispute arises from an agreement, an agreement for the establishment of a campus and a course of study in Italy. The aim of this course of study was to attract students from Italy to issue, to do a course of study and get American recognized, American accredited degrees. This contract provided for . . . Why is this not an arbitration? It's not an arbitration because the appellants brought the action in New York. If your question is why . . . There's not an arbitration clause? There is an arbitration clause. Yes. We raised that with the lower court. We raised that with the lower court.  I'm sorry. Is that right? That's correct, but our client brought an action against the two trustees of the not-for-profit foundation. The reason behind it was that those two trustees . . . the dispute arose when these two trustees met with an entity named Unicuzano, who had agreed to finance this venture. They met with project. They scared away Unicuzano. They did it without giving advance notice to our clients, and so the lawsuit in Italy was against the two trustees for what's effectively the Italian version of breach of fiduciary obligations to the foundation. And your contention was that was not the subject of arbitration? That's not the subject. That's true. Precisely. Precisely. Isn't it a concern, as your adversary notes that, at least under his interpretation, that the defendants attempted to associate themselves in a misleading fashion with a university based in New York, and that that satisfies the standard that I had set forth, that a party transacts business in New York if it projects itself into the state to engage in a sustained and substantial transaction of business? So first, that position is not supported by the record. There was an agreement, followed by a dispute, followed by a May 2012 agreement to what the appellees could and could not do. The claim is that they breached this agreement. The 2012 one. That's correct. And that agreement specifically provided for the appellee's ability to use the Turo name and logo. They're claiming it was not used properly. This is a breach of contract action. Now to the question of, well, doesn't this impact Turo and Turo's in New York, I say the answer is no, because it's Hornbook law that the actions, the existence of a New York plaintiff and the actions of a New York plaintiff don't confer jurisdiction by itself. The plaintiffs, the appellants here, put themselves into, injected themselves into Italy. They're the ones that reached out. They're the ones that traveled to Italy, met in Italy, contracted with parties in Italy to establish a campus in Italy and signed agreements to provide for how things would be operated there. And if there's a breach of an agreement governing that Turo's transactions in Italy, this, that does not confer jurisdiction in New York, simply because the plaintiff's located here. Where was the 2012 agreement executed? In Italy. After negotiations and meetings in Italy. Does it contain a choice of law clause? It contains an arbitration clause in Switzerland. I understand that. Does it contain a choice of law clause? Does it say Italian law applies, New York law applies? Do you remember? No, it doesn't. It has no choice of law clause. In looking at this, the website, I think it's your contention that the website is not really directed at New York residents, or people who are in New York who aspire to attain a college education. Is that right? That's correct. And we would maintain, not only is it not directed at New York residents, it's not intended for New York residents. What in the record supports that? The website itself discusses the courses of study. It talks about how the campus will be in Italy. It talks about how the ... drawing New Yorkers to Italy. I mean, that's the question. Is it reaching out to Italians already in Italy? Is it reaching out to New Yorkers trying to get them to come to Italy? Is there anything in the record that addresses that? We believe that the context of the materials in the website indicate that what was really intended was for Turo to attract foreign students to get an American degree. May I ask you, where it says, what we offer exclusive opportunities, and this is at A312, opportunity to study for a semester abroad, that's for Europeans? Yes, to study in the United States abroad. Study in the United States abroad. Well, it says what we offer, which is, isn't that Turo or Rome? Yes. In other words, those located in Italy can study abroad. For a semester. Yes. Yes. Your Honor's ... I would like to turn to the forum non-convenience. Absolutely. And I understand the common sense notion that perhaps this is something, this is a case that might best be resolved in Italy. Where I'm having some difficulty is, when I look at the district court's analysis, my question is, is there enough there for us to make that assessment? So, the district court says that it didn't have to balance the public and private interest factors, right? And, but in this court's in-bank decision in Irigori, it says, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case, but does not guarantee dismissal. A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable. And that suggests that there needs to be more of an analysis from a district court. Am I, do I have that wrong? So, I believe two things. One, I believe that the district court actually incorporated the findings that would support the public and private interest balancing. And second- You didn't actually say. No, I know. That's my- I understand, but I believe that inherent in what the judge was writing, the judge was making those conclusions. And in addition, the record supports it. Because, once again, the contracts were all negotiated and signed in Italy. The witnesses are Italian. The project was in Italy. The legal issues, if we look at the actual relief requested by the appellants, rather than how they couched the cause of action, they're looking for declaratory judgments that the May 2012 agreement was breached, that the bylaws of the Italian foundation were violated, that the Italian Ministry of Education decree, called the Muir Decree, was violated, and an injunction of the Italian action. Okay? These are all issues that have to be decided under Italian law. And I understand the court is looking for an exposition in the lower court's decision, but in fact, it raised many of these issues. It is certainly in the record. One of the things that I keep emphasizing is that we have to- For example, as I understand it, and correct me if I'm misunderstanding, when the court does its analysis, it says the factors split evenly. But it doesn't really provide an analysis or an elaboration. Is that enough? I believe that given the record, and given her findings on the other prongs, it's sufficient. I think it was internalized into her decision, but I understand that the exposition is not there. Your argument is that we can affirm on any basis, so long as there's a record basis for it. Yes. I believe- If the record is there, I believe this court can affirm. Even if the district court didn't go through and undertake a thorough analysis. I believe it undertook it. I believe it didn't expound on it in its opinion. But I also believe that the other two prongs are so strongly in favor of the appellees that that also weighs into the balance. But in any event, you think that- And your principle argument is there is no personal jurisdiction. There is no personal jurisdiction. There is a grounds for forum nonconvenience. There's absolutely no personal jurisdiction. It's the most threadbare claim of personal jurisdiction. The basis for personal jurisdiction in the lower court was the website, and there were only two attributes that that website pointed to. One was a contact me form with a little box for a comment. And two was the ability to look at and download the course list, the planned course list. The case law in the Second Circuit is replete with cases that decide that that's not sufficient. And that stretches to find that those attributes would render a website the basis of personal jurisdiction would, I suggest to this court, would subject most websites to personal jurisdiction in this state. And the cases cited for personal jurisdiction, based on this website and the interactivity of the website by the appellants, all of them, even though they may point to an ability to email, point to many other things, every single one of them. Sales, meetings, representatives in New York State, many other things. You're saying if the only indicia of personal jurisdiction are that you can contact whatever the company is and you can download an application, that would cover almost every website. It would, but it's not even download an application. You couldn't download an application on this website. You can only download the list of planned courses. This never got off the ground, by the way, so this was all perspective. If just by downloading information and sending an email, a website confers jurisdiction, I'm hard-pressed to think of a website that doesn't have those two attributes. Thank you. Thank you. Very briefly, Your Honor. Counsel says that this was a school that was advertising to students in Italy. Why is the website in English? Not to say that people don't speak English in Italy, but I'm sure predominantly they don't. I just noticed in the course list there were things like English. In other words, you could take a course to learn English. Well, maybe it's English literature. I don't know whether it's English language. It says English, college English. It doesn't say English literature. There are some people who speak English that could use an English course. The fact is that they also talk about American courses in marketing and business and otherwise. It is so New York-centric, this website. There is no mistaking what they are trying to do. It all comes back to the elephant in the room. Whatever they're doing here, they're advertising New York. They're advertising in connection to New York, making it their American degree, and, quite frankly, misleading everybody under the sun from Toro to the public. No question about it. Counsel says that, well, you know, we brought the action in Italy because we sued, and, of course, that's a whole different argument. These individuals are not subject to the arbitration clause. I can tell you that. It dehores the record, but I say it. The fact is they've already brought an action recently against Toro for the same claims that they did against the individuals. If you look at 317, there are some in Italian. If you look at 314, it offers an introduction to college writing, college writing one, English or college writing. There are quite a few courses that seem to be basic how to speak and write English. Okay. But then you look at the previous pages. They have intermediate macroeconomics theory, introduction to American business, multinational business management. There are formal pages that deal in English and deal with courses that are more American-based than they are in terms of Italian, and that's great that they provide that sort of service where they can help people speak English as well so they can understand the course curriculum better and understand the American system. Now, I hear you. And in terms of, you know, whether this is an agreement or a tort, you know, I'll go with Hargraves. I'll go with what this Court said over Rolls-Royce. It could be both. It could be both. What they are doing is it is a tort. It is committed against Toro. It's dealing with Toro. It's throwing their good name at risk by advertising this, exposing them to potential litigation down the road. I just think this more than meets the eye here, Your Honor. To be honest, I know it's a complicated problem, and I appreciate your time. Thank you. Thank you both for your vigorous arguments. The Court will reserve decision.